UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA

v.                                                  Case No. 8:05-cr-36-T-23TBM

WOJTEK CISZKOWSKI
_____/


### SENTENCING MEMORANDUM

During 2003 and 2004, the Drug Enforcement Administration (DEA) investigated

the smuggling of 3,4-methylenedioxymethamphetamine (MDMA) into the United States

from Poland.  Consequently, Jacek Kozlowski, Chris Muszynski, Edward Chrostowski,

and Maciej Slawomir Zaczykiewicz were indicted in United States vs. Jacek Kozlowski,

et al., Case No. 8:04-cr-219-T-23MAP (the Kozlowski case).

In September, 2004, Wojtek Ciszkowski approached Witold Arabasz, an

acquaintance of Ciszkowski's and a prolific confidential informant in the Kozlowski case.

According to Arabasz, Ciszkowski told Arabasz that he "was going to pay," which

Arabasz interpreted as a threat of retaliation for Arabasz's cooperation with law

enforcement in the Kozlowski case.  Although puzzled that Ciszkowski knew of

Arabasz's cooperation, Arabasz regarded Ciszkowski as a credible threat.  As a result

of Arabasz's report to law enforcement about Ciszkowski's threat, Arabasz and his

family entered the federal witness protection program.

In January, 2005, under the explicit directions of law enforcement, Chrostowski

contacted Ciszkowski, identified himself as one of the defendants in the Kozlowski case,

and claimed that Arabasz was the informer who caused Chrostowski's arrest. Chrostowski proposed that Ciszkowski assist Chrostowski by killing Arabasz.  In response, Ciszkowski suggested that he would kill Arabasz for a sufficient sum of money.

Later in January, 2005, Ciszkowski traveled to Bal Harbour, Florida (in Miami-Dade County), and met Chrostowski.  Ciszkowski and Chrostowski discussed Arabasz's role as a government informant, the related arrest of several Polish-Americans, and Ciszkowski's further interest in killing Arabasz.

On January 26, 2005, Ciszkowski and Chrostowski met and again discussed killing Arabasz.  To effect the killing of Arabasz, Chrostowski promised to provide Ciszkowski a firearm; 20,000 MDMA pills worth $40,000; and $10,000 in cash as a down payment on the fee for shooting Arabasz.  Ciszkowski and Chrostowski agreed to meet the next day for Chrostowski to deliver to Ciszkowski the gun, the MDMA, and the cash.

On January 27, 2005, Ciszkowski and Chrostowski met in a Clearwater, Florida, restaurant, and Chrostowski stated that he wanted Arabasz killed before March 3, 2005, Chrostowski's next court appearance in the Kozlowski case.  Because of planned travel to Illinois and Connecticut, Ciszkowski complained of inadequate time to complete the attack on Arabasz.  As the meeting concluded, Ciszkowski and Chrostowski walked across the parking lot to the rear of Chrostowski's car, Chrostowski opened the trunk and unzipped a duffle bag, and Ciszkowski looked down into the bag.  Inside were an unloaded Ruger semi-automatic .22 caliber pistol equipped with a silencer; $10,000 in

- 2 -

currency; and 20,000 MDMA pills (some actual and some counterfeit).  Ciszkowski took

the duffle bag, walked with the bag to his vehicle, and placed the bag on the

passenger's seat.  As Ciszkowski began to leave, law enforcement surrounded his

vehicle.  Refusing to exit the vehicle, Ciszkowski was forcibly removed and arrested.

The grand jury indicted (Doc. 18) Ciszkowski on six counts for (1) using a facility

of interstate commerce with the intent to commit a murder-for-hire contrary to 18 U.S.C.

§ 1958, (2) possessing MDMA with the intent to distribute, (3) possessing a firearm

equipped with a silencer in furtherance of a crime of violence contrary to 18 U.S.C.

§ 924(c)(1)(A) and 924(c)(1)(B)(ii), (4) attempting to kill to prevent the testimony of a

witness in a federal criminal case contrary to 18 U.S.C. § 1512(a)(1)(A), and (5 and

6) possessing marijuana on two occasions with the intent to distribute contrary to 21

U.S.C. § 841(a)(1) and 841(b)(1)(D).  A jury trial resulted in Ciszkowski's conviction

(Doc. 87) on counts one through three (using a facility of interstate commerce,

possessing MDMA with intent to distribute, and possessing a silenced firearm in

furtherance of a violent crime) and acquittal on counts three through six (attempting to

murder a federal witness and two counts of possessing marijuana with the intent to

distribute).

The base offense level for the first and second counts of conviction is 32.  After

"grouping," Section 3D1.4 of the Sentencing Guidelines adds another two levels,

yielding an offense level of 34, which in Criminal History Category III yields an advisory

sentencing range of 188-235 months for the first two counts of conviction (the range

recommended by the probation officer in the presentence report was reduced to 188-

235 months from 235-293 months by denial of a two-level enhancement for obstruction of justice).  The terms for the first two counts are concurrent.

Section 924(c)(1)(A)(i) provides a five-year minimum mandatory sentence for carrying or using a firearm in furtherance of a crime of violence.  However, under Section 924(c)(1)(B), the minimum mandatory sentence increases to thirty years if the firearm is equipped with a silencer.  Accordingly, Ciszkowski's sentence for the third count of conviction is a minimum, mandatory, and consecutive sentence of thirty years.

Obviously, the advisory sentence of 188 months (assuming a sentence at the low end) and the addition of the mandatory minimum of 360 months result in a sentence of 545 months or, stated differently, 45 years and 5 months.  At the sentencing hearing, Ciszkowski received a sentence of 372 months or, stated differently, 31 years.  The question recurs whether this is a "reasonable sentence" within the meaning of United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), and 18 U.S.C. § 3553(a).

After Booker, the Eleventh Circuit in a series of widely remarked and frequently consulted opinions, advanced toward a full exposition of methodology under the "reasonable sentence" regime of Booker.  See, e.g., United States v. Shelton, 400 F.3d 1325 (11th Cir. 2005); United States v. Winingear, 422 F.3d 1241 (11th Cir. 2005); United States v. Scott, 426 F.3d 1324 (11th Cir. 2005); and United States v. Talley, 431 F.3d 784 (11th Cir. 2005).  United States v. Montgomery, 165 Fed.Appx. 840, 841-42 (11th Cir. 2006), summarizes the prescribed sentencing formula:

> United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621
> (2005), made the sentencing guidelines advisory and subjected sentences
> to an unreasonableness review on appeal.  In sentencing, district courts

must still consult the guidelines and correctly calculate the guidelines range.  After doing this, the district court must consider the sentencing factors in § 3553(a) to determine a reasonable sentence, which may be more severe or more lenient than that provided for in the guidelines range.  Nothing in <u>Booker</u> altered the § 3553(c)(2) requirement that a district court state reasons for its departure from the applicable guidelines range.  The district court is obligated to give reasons for its departure from the guidelines, but does not have to give specific reasons for each § 3553(a) factor it considered in arriving at a reasonable sentence.

(citations omitted).

The Eleventh Circuit has affirmed a few sentences in which the district court, applying this methodology, migrated (mostly downward) from the advisory guidelines sentence.  <u>United States v. Patel</u>, _____ WL _____, No. 05-15075 (11th Cir., April 28, 2006); <u>United States v. Vawter</u>, _____Fed.Appx. _____, 2006 WL 325745, No. 05-12569 (11th Cir. 2006); <u>United States v. Montgomery</u>, 165 Fed.Appx. 840 (11th Cir. 2006); <u>United States v. Williams</u>, 435 F.3d 1350 (11th Cir. 2006).   However, the instant case presents a question that remains unaddressed (directly) by the Eleventh Circuit (at least as far as the parties and the district judge can determine), which question is whether the fact that a criminal conviction that carries a minimum mandatory sentence accompanies one or more counts that carry no minimum mandatory sentence (that is, carry only a guidelines sentence) is among the facts the district court may consider in determining a "reasonable sentence."  In other words, the question is whether the presence of a thirty-year minimum mandatory sentence for one of several counts of conviction is a factor the district court may consider in determining a guidelines sentence for the other counts of conviction and in determining a reasonable sentence under 18 U.S.C. § 3553(a).  More specifically, Ciszkowski's first two counts of conviction

yield a guidelines range of 188-235 months, subject potentially to some decrease (or

increase) after evaluating factors under 18 U.S.C. § 3553(a).  However, the third count

of conviction carries a minimum mandatory sentence of thirty years.  Ciszkowski's

sentence is thirty years, plus some or all of a term in the range of 188-235 months.  Is

Ciszkowski's mandatory service of thirty years a fact pertinent to determining the

duration of the accompanying guidelines sentence?

In United States v. Angelos, 345 F. Supp. 2d 1227 (D. Utah 2004), aff'd, 433 F.3d

738 (10th Cir. 2006), Judge Paul Cassell addressed important constitutional issues

presented by the conviction of a youthful, Criminal History Category I, marijuana

offender who carried (but neither brandished nor otherwise used) a small caliber pistol

during three small marijuana sales of $350.  The guidelines calculation for several

marijuana and other convictions was 78 months.  The three Section 924(c) offenses

yielded minimum, mandatory, consecutive sentences of five, twenty-five, and twenty-

five years or a total of fifty-five years.  With excruciating reluctance, Judge Cassell

overruled the sundry constitutional objections to the fifty-five years.  Ruling before

Booker but after his ruling in United States v. Croxford, 324 F. Supp. 2d 1230 (D. Utah

2004) and 324 F. Supp. 2d 1255 (D. Utah 2004), aff'd No. 04-4158, 2006 WL 541250

(10th Cir. 2006)), Judge Cassell treated the guidelines as "instructive but not binding,"

thereby adumbrating the effect of Booker, which appeared in less than two months.

Judge Cassell imposed the "stacked" minimum mandatory sentence of fifty-five years

and added one day to account for the 78-month advisory guidelines sentence on the

remaining counts of conviction (and to create the "consecutiveness" required for the

minimum mandatory sentence).  Judge Cassell noted sardonically:

> Lest anyone think that this is a "soft" sentence, in combination with the
> § 924(c) counts, the result is that Mr. Angelos will not walk outside of a
> prison until after he reaches the age of 70.

345 F. Supp. 2d at 1260.  The Tenth Circuit affirmed.

More recently, in United States v. Ezell, 417 F. Supp. 2d 667 (E.D. Pa. 2006), a

jury returned convictions for interfering with commerce by robbery in violation of the

Hobbs Act, aiding and abetting violation of the Hobbs Act, and carrying and using a

firearm in furtherance of a crime of violence contrary to Section 924(c).  Each of six  of

the counts of conviction under Section 924(c) carried a minimum mandatory sentence,

yielding a total minimum mandatory sentence of 132 (7 + 25 + 25 +25 + 25 + 25) years.

The other six counts of conviction carried only a guidelines sentence.  Rejecting an

array of constitutional objections, including the familiar (and persistently unsuccessful)

claim that Booker and Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159

L. Ed. 2d 403 (2004), eclipse Harris v. United States, 536 U.S. 545, 122 S. Ct. 2406,

153 L. Ed. 2d 524 (2002), and sentencing in a manner reminiscent of Judge Cassell in

Angelos, Judge DuBois concludes:

> The 132-year consecutive sentence mandated by § 924(c) in this case is
> unduly harsh.  However, this Court is bound by the statute and controlling
> precedent.  Accordingly, the Court sentences Mr. Ezell, inter alia, to serve a
> term of imprisonment of 132 years on the six § 924(c) counts of conviction,
> and a consecutive term of imprisonment of one day on the six robbery
> counts of conviction, for a total sentence of 132 years (1584 months) and
> one day.

417 F. Supp. 2d at 678.

As exemplified in <u>Angelos</u> and <u>Ezell</u>, the pertinent question for the district judge, recognizing the inevitable minimum mandatory sentence, is what additional term attributable to the advisory guidelines component of the total sentence is required to create a total sentence that is "reasonable" under <u>Booker</u> in light of the factors arrayed at Section 3553(a).  As a general rule in typical multi-offense cases, the several sentences run concurrently by operation of Section 5G1.2 of the Sentencing Guidelines, and the longest term for any offense among multiple offenses generally will subsume the term for all offenses of lesser length, as provided in Section 5G1.2(c).  As a result, the terms for multiple offenses are typically concurrent.  The guiding principle that commends concurrency is that both the statutory purposes of sentencing and the policy of the Sentencing Commission are fully accomplished so long as the guidelines sentence for each offense of conviction is imposed by the district judge and served by the defendant.  The statutory purposes of sentencing are accomplished without regard to whether the sentence for each offense is served independent of the service of the term for another offense; hence, concurrency.  So, for example, in Ciszkowski's case, the statutory purposes of sentencing are satisfied by concurrent terms for each of the first two counts of conviction, both of which carry a guidelines sentence and not a minimum mandatory.

Of course, Ciszkowski's third count of conviction, a violation of Section 924(c), carries a minimum, mandatory, and consecutive term of thirty years, and the congressional establishment of statutorily consecutive terms, such as under Section 924(c), demonstrates that Congress is not satisfied that the purposes of such terms are

served by concurrency (in the case of Section 924(c), the defendant serves the minimum mandatory sentence "in addition to" the offense in furtherance of which the firearm was used or carried).  So, if an advisory guidelines range is, say, 188-235 months and a five-year minimum mandatory attaches to another count of conviction, Congress insists on service of the five years, a term distinct from and consecutive to service of the 188-235 month term.  In most cases, because service of the minimum mandatory of, say, five years is insufficient to satisfy entirely the statutory purposes of sentencing implicit in the 188-235 month term (five years or sixty months is not long enough to satisfy the statutory purposes of 188 months), the defendant will serve the minimum mandatory plus all or most of the guidelines component of the sentence.  This formula would follow in most or all circumstances where the minimum mandatory sentence is <u>less</u> than the advisory guidelines sentence; the minimum mandatory and the full or nearly the full advisory guidelines sentence are served consecutively.

However, if the minimum mandatory sentence <u>exceeds</u> the advisory guidelines sentence, a different circumstance attaches, because the statutory purposes of the guidelines sentence of, say, five years are fully accomplished by service of a minimum mandatory term of ten or twenty years (and certainly thirty years).  In other words, although the statutory purposes of the minimum, mandatory, and consecutive sentence are not accomplished, even in part, by service concurrent with a guidelines sentence of lesser duration, every statutory purpose of a guidelines sentence is accomplished by service of a minimum, mandatory, consecutive sentence of greater duration (for exactly

the same reason that a guidelines sentence for a count of conviction is typically satisfied by concurrent service of a guidelines sentence of greater duration.)

Of course, the Section 924(c) minimum mandatory requires a sentence "in addition to the punishment provided for such crime of violence or drug crime in which the firearm was used or carried."  However, Section 924(c) neither specifies nor implies any particular duration of the sentence to which the Section 924(c) sentence is consecutive.

Accordingly, as required by statute, I have sentenced Ciszkowski pursuant to Section 924(c)(1)(B)(ii) to the minimum mandatory sentence of thirty years.  I have calculated the advisory guidelines range at 188-235 months for each of the first two counts of conviction.  I have determined that Ciszkowski must serve some portion of the advisory guidelines sentence in order to satisfy Section 924(c)'s requirement for service of the minimum mandatory sentence "in addition to" the term served for the violent crime in furtherance of which the gun was carried.  In this case, as in Angelos and Ezell, only a nominal term attributable distinctly to the guidelines component is necessary because the statutory purposes of the entire 188-month sentence are generously satisfied by a minimum mandatory term of thirty years, and the statutory requirement of consecutive service is satisfied by the concurrent one-year terms for counts one and two followed, as commanded by Section 924(c), by the minimum, mandatory, and consecutive thirty-year term for count three.

Foremost among the features of this case is the fact of the thirty-year minimum, mandatory, and consecutive sentence under Section 924(c)(1)(B)(ii) for Ciszkowski's

carrying a firearm equipped with a silencer.  Absent the silencer, Ciszkowski's sentence becomes closer to twenty years -- five years for the minimum, mandatory, and consecutive sentence for carrying a firearm (with no silencer) plus 188 months for the two concurrent terms attributable to the guidelines component from the first two counts of conviction.  Because Chrostowski at the behest of law enforcement handed Ciszkowski a firearm with a silencer but handed Ciszkowski the firearm in a duffle bag in which the attributes of the gun were not visible (although the silencer, even if visible, is not the variety readily identifiable to the untrained eye), Ciszkowski maintains (with some persuasive force) (1) that he did not knowingly and wilfully carry a firearm equipped with a silencer, (2) that the silencer was introduced by law enforcement gratuitously and with knowledge of the dramatic penal effect on Ciszkowski, and (3) that the additional increment of twenty-five years attributable to the unexpected and uninvited silencer is wholly manufactured by law enforcement and not the result of any criminal design on Ciszkowski's part.  Ciszkowski's legal objection based on his lack of knowledge of the silencer was overruled; he remains criminally responsible for the silencer under governing law without regard to his knowledge of the silencer.  He knowingly and wilfully possessed the firearm, and the firearm was equipped with a silencer.  That is all the law requires.

However, the fact that Ciszkowski would have received only about twenty years based on his actual criminal design and the fact that he faced about forty-five years (thirty years plus 188-235 months) based on a unilateral decision by law enforcement to provide unexpectedly a silenced, rather than an unsilenced, firearm in the duffle bag,

implicates rather pointedly Section 3553(a)((2)(A)'s command to consider "the seriousness of the offense" and "to provide just punishment for the offense."  With respect to the particular punishment provided in this instance, I echo my learned colleague Judge Cassell in saying that, lest someone think this sentence is "soft," Wojtek Ciszkowski will emerge from prison at age sixty-nine, after service of thirty-one years.  If he served forty-five years, he would emerge (if at all) at age eighty-four.

Given the imperative of Section 924(c)(1)(B)(ii), the present sentence is "reasonable" within the meaning of Booker and accords as fully as possible with 18 U.S.C. § 3553(a).  The details of the sentence were announced at the hearing.

ORDERED in Tampa, Florida, on May 2, 2006.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE